96 N.J. Super. 96 (1967)
232 A.2d 470
THERESA DESMOND, PLAINTIFF,
v.
LEON C. KRAMER, LIONEL KNOLL, SOMERSET BUS CO., INC., A NEW JERSEY CORPORATION AND SOMERSET NOLL CORP., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Union County Court, Law Division.
Decided July 12, 1967.
*97 Mr. James W. Hurley, attorney for plaintiff.
Mr. John J. Sheehy, attorney for defendants Somerset Bus Co., Inc. and Somerset Noll Corp. (Messrs. Sheehy & Sheehy, attorneys).
Mr. James H. McLeod, attorney for defendants Leon C. Kramer and Lionel Knoll.
FULOP, J.S.C. (temporarily assigned).
In August 1960 a bus owned by defendant Somerset Bus Company and operated by its employee was stopped on Route 22 in Mountainside for the purpose of picking up and discharging passengers *98 for hire. A truck owned by defendant Kramer and operated by defendant Knoll was driven into the rear of the bus while it was so stopped. The impact propelled the bus forward, causing it to collide with a bus owned by defendant Somerset Noll Corp. and leased to defendant Somerset Bus Company.
Plaintiff was a passenger on defendant Somerset Bus Company's bus at the time of the accident. She was born on August 30, 1942. Suit was instituted in August of 1965 shortly before her 23rd birthday.
In 1962 14 passengers started suit for personal injuries. The cases were consolidated and tried as to liability only.
The pleadings in those cases reveal that defendants answered denying liability. Defendants Kramer and Knoll crossclaimed against defendant Somerset Bus for contribution under the Joint Tortfeasors Act (N.J.S. 2A:53A-1 et seq.). The pretrial order indicates that contribution was one of the issues to be decided.
The cases took 11 days to try. Each defendant cross-examined the witnesses for plaintiffs, presented evidence and cross-examined each other's witnesses.
The actions brought against defendant Somerset Noll and the driver of its bus were dismissed at the conclusion of the testimony. A verdict was returned in favor of all plaintiffs and against Kramer, Knoll and Somerset Bus Co. and its driver. The judgment entered on the verdict recited that the only issue left to be tried was damages.
Defendant Somerset and its driver appealed from the verdict. The Appellate Division reversed the trial court and ordered a new trial in an unreported decision dated June 24, 1964.
The pleadings and pretrial order for the second trial reveal that defendants Kramer and Knoll again sought contribution from Somerset. Defendant Somerset objected to the participation of defendants Kramer and Knoll in the second trial on the ground that the latter's liability had been determined in the first trial.
*99 The court requested briefs on the question of whether defendants Kramer and Knoll had a legal right to participate in light of the Joint Tortfeasors Contribution Act. The court decided that defendants Kramer and Knoll had the right to participate, to engage in cross-examination and to present witnesses relating to the liability of defendant Somerset.
The second trial lasted ten days, during which both defendants did in fact cross-examine each other's witnesses with a view to the issue of contribution.
The jury returned a verdict in favor of all plaintiffs and against all defendants. The order for judgment specifically establishes that defendant Somerset's negligence was a "concurring efficient cause of the accident." There was a second appeal, and on January 31, 1966 the Appellate Division affirmed the judgment.
The 14 cases have been or are being disposed of as to damages only, either by trial or settlement.
Plaintiff's allegations and the defendants' answers in this case are the same as those interposed in the earlier cases, including a demand for contribution by defendants Kramer and Knoll against defendant Somerset.
There are two motions before the court. Plaintiff moves for an order denying defendants the right to relitigate the issue of negligence as between themselves and as between themselves and her. Defendants Kramer and Knoll also move for an order denying defendant Somerset the right to relitigate the question of negligence as between it and defendants Kramer and Knoll. The first motion is based on principles of estoppel by judgment and the second seeks support in the doctrine of res judicata. I shall dispose of the second motion first.
Somerset contends that Kramer was not an adverse party in the prior suits and that Somerset is therefore not foreclosed from relitigating the issue of its negligence in this action.
In Restatement, Judgments, § 82 (1942), it is said:
*100 "The rendition of a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate, or have an opportunity to litigate, between themselves."
See also 1B Moore, Federal Practice (2d ed. 1965), § 0.411 [2].
In Pearlman v. Truppo, 10 N.J. Misc. 477, 159 A. 623 (Sup. Ct. 1932), Pearlman's automobile had been in collision with Truppo's. A passenger in Pearlman's car sued both of them for injuries resulting from the accident. The case resulted in a judgment against Pearlman in favor of the passenger, and the action against Truppo was nonsuited. Thereafter Pearlman sued Truppo for his damages suffered in the same accident. Truppo contended that the judgment in the prior action established his nonnegligence and was res judicata, barring Pearlman's action. Judge (later Justice) Ackerson held that the judgment in the prior suit was not res judicata as to Pearlman because he and Truppo had not been adverse parties. He said:
"It is fundamental and universal that the former judgment proffered as res adjudicata in a subsequent suit must have been rendered in an action in which the parties to the subsequent suit were adverse parties. What is meant by adverse parties scarcely needs definition. Its significance is apparent from the expression itself. They must be opposite parties to an issue between them. The issue must be proffered by one and controverted by the other. They must be arrayed on opposite sides of the issue which must be raised by appropriate cross-pleadings between the defendants themselves, so that each may have control of the proceedings to enable him to exhaust the question of liability inter sese. It is not enough that they, by their separate answers, deny liability and claim that the accident was due to the negligence of the other as such pleading only goes to answering the claim of the plaintiff and tenders no issue to which the other defendant may demur or reply to or join issue upon so as to settle the liability on the other." (at pp. 478-479)
See also "Developments in the Law, Res Judicata," 65 Harv. L. Rev. 818, 860-861 (1952); Stivali v. Space, 9 N.J. Super. 462 (Cty. Ct. 1950); 1 Freeman on Judgments (5 ed. 1925), §§ 422-425.
*101 Under these definitions defendants here were adversaries in the prior action. Kramer and Knoll crossclaimed against Somerset for contribution. In order to succeed on that issue they were required to establish Somerset's negligence as a proximate cause of the accident. Both parties fully litigated the issue. Kramer and Knoll had the right to object to the dismissal of the action against Somerset. R.R. 4:13-6(b) provides in part as follows:
"Where a claim for contribution is made, (1) the answer shall be served upon the parties against whom such relief is sought and no responsive pleading thereto need be filed, and (2) a motion for dismissal of the complaint as against any such codefendant shall be held in abeyance until the conclusion of the entire case and at that time the granting of the motion or the submission to the jury of the claim of contribution shall constitute an adjudication upon the merits of such claim."
Kramer and Knoll had the right to appeal from a judgment in favor of Somerset, and Somerset had the right to and did appeal from a judgment against it. Kramer and Knoll were also adverse parties on the appeal. Somerset's negligence as a concurrent proximate cause of the accident was tried, determined and affirmed in actions in which Kramer and Knoll were adverse parties.
The interests of the State require that the issue shall not be litigated again. Restatement, Judgments, § 1 (1942). The crossclaim having been filed and actually litigated and determined, the prior judgment is mutually conclusive as between defendants. McAndrew v. Mularchuk, 38 N.J. 156 (1962); Bray v. Gross, 16 N.J. 382 (1954); Donofrio v. Farr Lincoln Mercury, 54 N.J. Super. 500 (App. Div. 1959). See also Di Orio v. City of Scottsdale, 2 Ariz. App. 329, 408 P.2d 849, 850-852 (App. Ct. 1965); Vestal, "Preclusion Res Judicata Variables: Parties," 50 Iowa L. Rev. 27, 35-36 (1964).
Plaintiff also seeks to bar Somerset from relitigating with her its negligence as a concurrent proximate cause of the accident. Somerset contends that since plaintiff was not a party to any of the prior actions and was not in privity *102 with any party therein, she is not entitled to the benefit of those prior adjudications. This contention is based upon the absence of mutuality, i.e., if Somerset had prevailed in the prior actions, plaintiff would not be barred.
It has heretofore been held that res judicata or collateral estoppel by judgment is available only when there is mutuality of estoppel. The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone the other way. Miller v. Stieglitz, 113 N.J.L. 40, 44 (E. & A. 1934); 50 C.J.S. Judgments §§ 756 and 765. See also cases cited in 1 Freeman, Judgments (5th ed. 1925), § 428. However, the requirement of mutuality has little support in reason and has been substantially eroded in well-reasoned recent decisions. Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W. Harr. 124, 36 Del. 124, 172 A. 260 (Super. Ct. 1934).
A now classic attack on the requirement of mutuality was made by Justice (now Chief Justice) Traynor in Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (Sup. Ct. 1942) in which he said:
"The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. Coca Cola Co. v. Pepsi-Cola Co., supra. See cases cited in 24 Am. & Eng. Encyc., 2d Ed., 731; 15 Cinn. L. Rev. 349, 351; 82 Pa. L. Rev. 871, 872. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. Ibid. There is no compelling reason, however, for requiring that the party, asserting the plea of res judicata must have been a party, or in privity with a party to the earlier litigation.
No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend.

* * * * * * * *
In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea *103 is asserted a party or in privity with a party to the prior adjudication?" (at pp. 894-895)
In United States v. United Air Lines, Inc., 216 F. Supp. 709 (D.C. Wash., Nev.), affirmed sub. nom. United Air Lines, Inc. v. Weiner, 335 F.2d 379 (9 Cir. 1964), certiorari dismissed 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) two sets of cases were instituted for damages for the death of a number of passengers in an airplane crash. One set of cases was tried and concluded in the United States District Court in California. It was there determined that defendant was liable. A second set of cases against the same defendant for the deaths of other passengers in the same accident was instituted in the United States District Court in Nevada. There was no privity between the plaintiffs in the Nevada federal court action and those in the California action. The court held that defendant was collaterally estopped by the prior judgment from denying its liability in the second set of actions:
"While it is true that the general rule requires that there be identity of parties to invoke the doctrine of res judicata, nevertheless, the Courts, increasingly so in the last 20 years, have not adhered to that doctrine, and have held that no constitutional right is violated where the thing to be litigated was actually litigated in a previous suit, final judgment entered, and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it.

* * * * * * * *
It would be a travesty upon the concept to now require these plaintiffs who are the survivors of passengers for hire on the United Air Lines plane to again re-litigate the issue of liability after it has been so thoroughly and consummately litigated in the trial court in the 24 consolidated cases tried at Los Angeles. There is every reason `in the interest of justice' for not invoking the rule requiring identity of parties, and no reason in justice or law for invoking it in these cases. Nor is there any constitutional bar to the conclusions herein reached. The defendant has had its day in court on the issue of liability before a jury." (216 F. Supp., at pp. 725-726, 728-729; emphasis supplied)
See also Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2 Cir. 1964), certiorari denied 377 *104 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); Factor v. Pennington Press, Inc., 230 F. Supp. 906, 910 (D.C.N.D. Ill. 1963); State of Michigan v. Morton Salt Company, 259 F. Supp. 35, 65-66 (D.C. Minn. 1966); Lustik v. Rankila, 269 Minn. 515, 131 N.W.2d 741, 744 (Sup. Ct. 1964).
The Bernhard case brought criticism from one commentator who, although welcoming the demise of the requirement of mutuality of estoppel, was fearful of two problems. He stated them as follows:
"(a) that one not a party to the prior action should not be allowed to assert the prior judgment against one who was a party thereto unless the person against whom the judgment is asserted in fact had a full, fair and effective opportunity to contest the issue; and (b) that the plea should not be allowed where its allowance would result in intolerable anomalies in the administration of justice." Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," 9 Stan. L. Rev. 281, 322 (1957)
The anomalies that Professor Currie had in mind were those in which an accident of major proportions might result in numerous suits against one defendant. Where there are a number of prior inconsistent verdicts and the prospect of more separate suits, it is not reasonable that defendant be held to be barred by a judgment against it while others in its favor are ignored.
Professor Currie retracted his reservations in an article entitled "Civil Procedure: The Tempest Brews," 53 Cal. L. Rev. 25 (1965), wherein he specifically noted the decision in the United Airlines case, supra.
The problem of inconsistent verdicts can be avoided if, as a practical matter, a rule is adopted which would allow the application of res judicata only where there has been no actual inconsistency.
"To adopt a contrary position and not allow the plea where there is a mere possibility of inconsistent verdicts destroys the effectiveness of the principle.

* * * * * * * *
*105 If the issue has been fully and fairly litigated, the paper tiger of inconsistent verdicts should not be a barrier to the rejection of the requirement of mutuality of estoppel." "Res Judicata: The Shield Becomes a Sword," 1964 Duke L.J. 402, 404 (1964).
There are two troublesome recent cases on the subject in New Jersey. In Reardon v. Allen, 88 N.J. Super. 560 (Law Div. 1965), Judge Botter rejected the reasoning of the modern cases above cited and adhered to the mutuality requirement. The decision appears to be grounded largely upon the fact that the first judgment in that case was a judgment in a county district court for property damages while the later case was in the Superior Court for personal injuries. The court said:
"It seems unfair to a defendant to allow judgments for a relatively small subrogated property damage claim, often rendered in a court of limited jurisdiction, to determine the outcome of more serious personal injury actions." (at p. 572)
Perhaps when a prior case has not afforded the defendant full opportunity and motivation for a strong defense, its effect should not be extended to other cases arising out of the same facts and involving the same issues. Of course, it would be difficult to formulate a general rule to apply on this basis. But the argument has little to do with the validity of the requirement of mutuality. That rule would deny conclusiveness to a decision in an action involving millions of dollars determined in the highest court, if the opposing party in the second action was not in privity with the one in the first action. In any event, Reardon v. Allen is distinguishable on its facts, is not binding, and is not persuasive in the present situation.
Reilly v. Dziamba, 90 N.J. Super. 325 (App. Div. 1966), is a per curiam decision of the Appellate Division and would be binding if on point. Dziamba had recovered a judgment against Warren for damage to his car, and Warren's counterclaim for property damage had been dismissed. Thereafter Mrs. Reilly, a passenger in the Warren car, and her husband *106 sued both Warren and Dziamba for damages for personal injuries suffered in the same accident. The Reillys recovered judgment against both Warren and Dziamba. The trial judge ordered Warren to indemnify Dziamba on the basis of the prior judgment. The Appellate Division reversed, holding that the Reillys were not affected by the prior judgment, especially in view of the fact that "the prior litigation was conducted by the collision carriers of the respective parties." The court added:
"Here the issue of negligence depended upon whether one or more of defendants had been guilty of a breach of duty owing Mrs. Reilly. The Reillys could not invoke the prior judgment to fix liability for their damages upon the Warrens. Neither may Dziamba do so." (at p. 327)
It seems clear that the Reillys were not bound by the prior judgment and had the right to pursue Dziamba as well as Warren. The inconsistent prior verdict did not give rise to a right of indemnification to Dziamba against Warren. The statement that the Reillys could not invoke the prior judgment against Warren to fix liability was dictum unnecessary to the determination. The Reillys did not seek to assert collateral estoppel against Warren. Finally, if it is conceivable that the duty of Warren to Dziamba was different from the duty of Warren to Reilly, then the case is distinguishable. Here the prior cases were by passengers in precisely the same relation to Somerset as the present plaintiff and they sued, as does she, for damages for personal injuries. Precisely the same duty is involved to every paying passenger in the bus. Also no subrogated collision carrier was involved in the prior actions.
And if these cases were in point, they are outweighed by McAndrew v. Mularchuk, 38 N.J. 156 (1962), in which the Supreme Court, by Justice Schettino, cited with approval the authorities disapproved by the trial court in Reardon and said:
*107 "Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant." (at p. 161)
In Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W. Harr. 124, 36 Del. 124, 172 A. 260 (Sup. Ct. 1934), Judge Rodney said for the court:
"The doctrine of res judicata is primarily one of public policy and only secondarily of private benefit to individual litigants. It draws its strength not so much from the private advantage of the party seeking to invoke it, but its roots lie in the principle that public policy and welfare require a definite end to litigation when each of the parties has had a full, free and untrammelled opportunity of presenting all of the facts pertinent to the controversy. The primary object of res judicata (public policy) is based upon the maxim reipublicae ut sit finis litium  it concerns the commonwealth that there be a limit to litigation. 2 Freeman on Judgments, § 626, 38 Yale Law Journal 299, 33 C.J. 267." (at p. 262)
Jeremy Bentham described the mutuality rule as one imported from the gaming table (see Reardon v. Allen, supra, 88 N.J. Super., at p. 567). The basis for the rule is the feeling that it is not good sportsmanship to allow one party to have the advantage of a prior judgment on the same issues when he would not have been bound if the result had been the other way. But litigation is not a game or sport. It is an effort to achieve a just result under the law. It would be absurd for the law solemnly to adjudge that defendant Somerset was negligent as to 14 of its passengers but not as to the 15th passenger injured in the same accident.
There are undoubtedly instances in which a party should not be estopped by a prior judgment from relitigating the same issue with a different adversary. In Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969 (U.S.Ct. Claims 1967), Judge Davis summed up the result of the decisions as follows:
"From the course of decisions since Bernhard in 1942 it is clear to us that the courts have been moving cautiously, attending closely to *108 the circumstances and needs of the particular case and type of litigation, rather than applying sweeping generalizations or the broad principle that `one day in court' is always enough. If appraisal of the factors pertinent to the concrete case plainly teaches that the prior judgment should be conclusive, mutuality may well be held unnecessary; but if that road is not one clearly marked, relitigation will still be allowed." (at p. 976)
This is a strong case for applying estoppel by judgment and dispensing with the requirement of mutuality. The issue to be decided is identical with that previously decided. The same facts and the same legal duty of a common carrier to a passenger are involved. The prior actions were virtually class actions. There have been no inconsistent or contrary verdicts. No case has been decided in defendant's favor. The prior cases involved claims for serious personal injuries. The stakes were high. Defendant had every reason to test fully the proofs against it and to assert every factual and legal defense. The reversal of the first judgments against it gave defendant a second chance to try the issue with the aid of the transcript of the testimony in the first trial. Defendant conducted its defense vigorously in extended trials. The two juries agreed. The final judgment was affirmed on appeal. It seems extremely unlikely that defendant could present anything substantial in this case which it did not present in the prior cases. The issue of defendant's negligence has been fully canvassed. The public interest demands an end to the litigation of the same issue. Interest reipublicae ut sit finis litium.
Defendant Somerset Bus Co. is estopped to deny that it was negligent and that its negligence concurred with that of Kramer and Knoll to cause the accident in which plaintiff was allegedly injured. Defendants Kramer and Knoll do not deny that they are similarly estopped. The motion of plaintiff and the motion of codefendants Kramer and Knoll are granted.